**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| FIX THE COURT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 18-2091 |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

**STATEMENT OF FACTS** ................................................................................2

**ARGUMENT** ................................................................................3

   **I.**   **THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF**. ...6

   **II.**   **FIX THE COURT IS ENTITLED TO A PRELIMINARY INJUNCTION**. .............7

      **A.**   **Fix the Court Is Likely to Succeed on the Merits**. ...................................7

      **B.**   **Fix the Court Will Be Irreparably Harmed Absent the Requested Relief.** .............9

      **C.**   **The Requested Relief Will Not Burden Others' Interests**.....................................14

      **D.**   **The Public Interest Favors the Requested Relief**. ..................................15

**CONCLUSION** ................................................................................17

## **TABLE OF AUTHORITIES**

**CASES**

*Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) ...................................................................14

*Al-Fayed v. C.I.A.*, 254 F.3d 300 (D.C. Cir. 2001) ....................................................................7

*Calderon v. U.S. Dep't of Ag.*, 236 F. Supp. 3d 96 (D.D.C. 2017) ............................................13

*Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) .................................................................................................................................8

*Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) ...................................................................14

*Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3 (D.D.C. 1999) .................................................................................................................................16

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96 (D.D.C. 2017) .................................................................................................................................13

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181 (N.D. Cal. 2008) .................................................................................................................................13

\* *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) ....... 10, 13, 14, 15

*Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) ..............................................16

*Judicial Watch v. U.S. Secret Service*, 726 F.3d 208 (D.C. Cir. 2013) .......................................12

*Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ...................14

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .................................................11, 16

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ....................................................................13

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ...........................................................7

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) .....................................9, 13

*Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5 (D.D.C. 2014) ...................................................14

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998) ..................................................8

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) .........16

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ......................................................8

*Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) ...................... passim

## STATUTES & REGULATIONS

5 U.S.C. § 552 ...........................................................................................................3, 7, 8

28 C.F.R. § 16.5...........................................................................................................4, 10

## CONGRESSIONAL MATERIALS

H.R. Rep. No. 93-876 (1974) ............................................................................................7, 13

## OTHER AUTHORITIES

*A Senate Deadline for Kavanaugh*, Wall St. J. (July 10, 2018, 7:37 PM),
    https://www.wsj.com/articles/a-senate-deadline-for-kavanaugh-1531265850 .........................4

Adam Liptak, *How Trump Chose His Supreme Court Nominee*, N.Y. Times, Feb. 6, 2017,
    https://www.nytimes.com/2017/02/06/us/politics/neil-gorsuch-trump-supreme-court-
    nominee.html ...........................................................................................................2, 10

Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time,
    July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/ ............................13

Katie Benner, *Rosenstein Asks Prosecutors to Help With Kavanaugh Papers in Unusual Request*,
    N.Y. Times, July 11, 2018, https://www.nytimes.com/2018/07/11/us/politics/rosenstein-
    kavanaugh-document-review-prosecutors.html.....................................................................15

Lydia Wheeler, *Trump Eying Second Supreme Court Seat*, The Hill (Apr. 23, 2017).......... 2, 10

Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change The
    Supreme Court*, FiveThirtyEight (July 9, 2018), https://fivethirtyeight.com/features/how-brett-
    kavanaugh-would-change-the-supreme-court/ ......................................................................13

Stephen Jessee & Neil Malhotra, *The Chart That Shows the Supreme Court Will Be Out of Step
    With the Country*, N.Y. Times, July 12, 2018,
    https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html............13

*Trump Chooses Brett Kavanaugh for the Supreme Court*, N.Y. Times, July 9, 2018,
    https://www.nytimes.com/2018/07/09/us/politics/trump-supreme-court-nominee.html............3

On July 9, 2018, President Trump nominated Judge Kavanaugh to fill a vacancy created by Justice Anthony Kennedy's retirement. On July 24, 2018, Plaintiff Fix the Court, a non-partisan, grassroots organization dedicated to reform and transparency of the Supreme Court and public education regarding the same, sought public records concerning Judge Brett M. Kavanaugh's past public service based on President Trump's nomination of Judge Kavanaugh to the Supreme Court. Filing the request soon after Judge Kavanaugh's nomination ensured that Fix the Court would be able to fulfill its mission to inform the public rapidly prior to the United States Senate's confirmation hearings. Yet despite Fix the Court's diligence, it has been unable to obtain even a single record from the Department of Justice ("DOJ") in response to its Freedom of Information Act ("FOIA") request regarding records held by DOJ's Office of Legal Policy ("OLP"), even despite DOJ's recognition that Fix the Court's FOIA request should be expedited.

Judge Kavanaugh brings to his nomination a lengthy career demanding thorough public scrutiny, and the non-public record of his activities before his appointment to the federal bench holds high value to the public. With Senate Majority Leader Mitch McConnell having promised to fast-track confirmation proceedings (with cooperation and coordination with the Trump administration, including DOJ), DOJ's failure to meet its FOIA obligations threatens to deprive Fix the Court and the American public of information essential to ensure that Judge Kavanaugh's appointment receives rigorous, informed debate—in the Senate and among the general public—appropriate for a critical post in a representative democracy. Fix the Court and the American public have a brief opportunity to sift the record of Judge Kavanaugh's public career and inform the Senate as it makes an effectively irreversible decision that will shape the federal judiciary for decades. Fix the Court seeks immediate injunctive relief to protect its vital interests and those of the public it serves.

## STATEMENT OF FACTS

On July 24, 2018, Fix the Court submitted a FOIA request to DOJ seeking "all correspondence sent by Office of Legal Policy personnel to Brett M. Kavanaugh and all correspondence sent by Brett M. Kavanaugh to Office of Legal Policy personnel from January 20, 2001, to May 30, 2006," noting that Judge Kavanaugh had served in the White House during this timeframe. Compl. ¶ 7, ECF No. 1; Declaration of Gabe Roth ("Roth Decl.") ¶¶ 10, 13; Ex.[1] A at 2. For clarity, Fix the Court noted that responsive records should include "all memos and all e-mail, print or other correspondence and attachments including instances where [Judge Kavanaugh] was merely carbon copied (CC'd)." Compl. ¶ 8; Roth Decl. ¶ 14; Ex. A at 2. Fix the Court, a non-partisan, grassroots organization dedicated to pro-transparency reforms of the federal judiciary, including the Supreme Court, and public education concerning issues related to the Court, sought these records related to Judge Kavanaugh's past public service, due to President Trump's nomination of Judge Kavanaugh to fill Justice Kennedy's seat on the Supreme Court. Roth Decl. ¶¶ 1-2, 10.

In its request, Fix the Court requested expedition because the "American public has a substantial and urgent need to have access to public records concerning Mr. Kavanaugh's public service record to inform its understanding of the impending confirmation hearings." Compl. ¶ 9; Roth Decl. ¶ 15; Ex. A at 2. On August 3, 2018, Vanessa R. Brinkmann, Senior Counsel at OIP, sent an acknowledgment letter to Fix the Court and, recognizing the urgency of the matter, stated that she had "determined that [Fix the Court's] request for expedited processing should be granted." Compl. ¶ 11; Roth Decl. ¶ 17; Ex. B. But to date, DOJ has not made the required determination, produced records, or indicated to what extent expedited processing may impact

---

[1] Lettered exhibits referenced herein are attached to the Roth Declaration.

processing of Fix the Court's FOIA request. Roth Decl. ¶ 20. Fix the Court thus filed the present

action on September 6, 2018, as DOJ has failed to notify Fix the Court of any determination

regarding Fix the Court's request or to produce the requested records within statutory deadline

required by FOIA, even after taking ten additional days to address "unusual circumstances." *See*

Compl. ¶ 11, ECF No. 1; 5 U.S.C. § 552(a)(6)(A)(i).

## **ARGUMENT**

Judge Kavanaugh was nominated to replace Justice Anthony Kennedy on the Supreme

Court of the United States on July 9, 2018, and Senate Republicans have indicated their intention

to move forward with the confirmation process as soon as possible, putting the nomination to a

vote no later than fall of 2018 before the November elections.[2] Indeed, as of September 4, 2018,

the Senate's confirmation hearings have already begun. Fix the Court's FOIA request seeking

records concerning Judge Kavanaugh's past public service, which is highly relevant to his

confirmation hearings, has been pending with DOJ past DOJ's statutory deadline to respond.

Roth Decl. ¶ 20. To date, DOJ has not disclosed a single page of responsive OLP

communications to Fix the Court and has failed even to make any determinations as to whether it

will grant Fix the Court's request. *Id.* Faced with promises of a rapid confirmation process and

already-in-progress Senate hearings, Fix the Court now asks the Court to enjoin DOJ from

irreparably harming Fix the Court and the public interest through its failure to make the

determination on its request required by law and the resulting wrongful withholding of records.

---

[2] *See, e.g.*, *A Senate Deadline for Kavanaugh*, Wall St. J. (July 10, 2018, 7:37 PM), https://www.wsj.com/articles/a-senate-deadline-for-kavanaugh-1531265850 ("Mr. McConnell is saying he intends to have a vote in the fall, and the goal should be to have a Justice Kavanaugh ready to sit on the High Court when it opens its new term on Oct. 1.").

Judicial opinions reflecting Judge Kavanaugh's tenure as a federal judge are readily available, but equally important records reflecting his credentials and conduct prior to his appointment to the federal bench are not. These records, which Fix the Court seeks, are highly relevant to the Senate's consideration of his nomination in the ongoing confirmation hearing.

In particular, the records that Fix the Court seeks are critical to public participation in the debate surrounding the Senate's consideration of whether Judge Kavanaugh misled the Senate during his 2004 and 2006 hearings. At the confirmation hearing, Senator Patrick Leahy commented on September 5, 2018, that between 2001 and 2003, "two Republican staffers on the Senate Judiciary Committee regularly hacked into the private computer files of six Democratic senators . . . . The ringleader behind this massive theft was a Republican Senate staffer named Manny Miranda." *See* Sen. Patrick Leahy, *Comment Of Senator Leahy On His Questioning Of Judge Kavanaugh On Hacked Democratic Files*, Sept. 5, 2018, *available at* https://www.leahy.senate.gov/press/090518kavanaughday2questions. Judge Kavanaugh worked closely with Mr. Miranda throughout this time, but testified in his 2004 and 2006 hearings that he was not aware of any "untoward" behavior. However, Senator Leahy alleges that three emails that have just been made public reveal that Mr. Miranda was disclosing private information to Judge Kavanaugh, and, in the words of Senator Leahy, "[t]here are many more that have been hidden from public scrutiny under a faulty claim of committee confidentiality." *Id.* Senator Leahy "suspect[s] there are even more that were never released to the committee at all, based on the partisan and woefully incomplete document production." *Id.* Senator Leahy concluded that "[t]here are numerous other committee confidential emails that shed light on Judge Kavanaugh's relationship with Miranda. They need to be made public now, before it's too late." *Id.*; *see also* Tierney Sneed, *Leahy Trips Kavanaugh Up With Questions About Allegedly Stolen Emails*,

Talking Points Memo (Sept. 5, 2018, 12:24 p.m.), https://talkingpointsmemo.com/dc/leahy-trips-kavanaugh-up-with-questions-about-allegedly-stolen-emails. These are serious allegations that warrant robust and informed public debate. Fix the Court seeks to do just that and ensure that the public is able to meaningfully participate in an appropriately thorough and complete examination of Judge Kavanaugh's nomination.

And this is just one of the many important issues the requested records might illuminate. Further examples of pre-judicial records that bear on issues Judge Kavanaugh would be likely to encounter in cases before the Supreme Court include those involving:

- Reflections on his work for Independent Counsel Kenneth Starr during the investigation of President Bill Clinton, including drafting portions of the report that led to the president's impeachment (the "Starr Report"); and

- His service as Senior Associate Counsel, Associate Counsel to the President, and White House Staff Secretary for President George W. Bush, during a time of critical policy and legal decisions regarding national security and due process of law, such as the indefinite detention of inmates at a camp in Guantanamo Bay, Cuba.

These non-public records hold great public interest and should see daylight before confirmation hearings conclude.

To date, DOJ has failed to comply with FOIA's requirement that it provide a determination as to the records it will produce in response to Fix the Court's request, including whether it will withhold requested records in full or in part. DOJ's grant of expedited processing of the request is appropriate but insufficient. Even on an expedited track, Fix the Court has no guarantee, or even reasonable expectation, that DOJ will make the prompt determination required by law and produce any non-exempt responsive records in time to inform the public of

their contents prior to the potential confirmation of Judge Kavanaugh. DOJ's FOIA expedition is no match for the expedition with which the Senate has promised to move along Judge Kavanaugh's confirmation. Accordingly, Fix the Court asks the Court to act now to enjoin DOJ from irreparably harming Fix the Court and the public interest through its wrongful withholding of records.

Fix the Court meets the requirements for preliminary injunctive relief—indeed, if informing the public regarding an imminent lifetime appointment to the Supreme Court fails to qualify for such relief, it is hard to imagine what would. Fix the Court is likely to succeed in establishing that it is entitled to receive the requested records. Moreover, anything less than immediate relief requiring DOJ to process Fix the Court's FOIA request and produce the requested records promptly would irreparably harm Fix the Court's ability to use the requested records to advance its mission and inform the general public in a timely fashion about the nomination of Judge Kavanaugh. *See* Roth Decl. ¶¶ 5-7, 11-12. The requested injunction would not harm DOJ's interests or the interests of the general public; in fact, it is entirely consistent with DOJ's reportedly extraordinary efforts to convey material to the Senate for review and would bolster the public interest by dramatically enhancing the public's ability to evaluate a nominee for the Supreme Court and to empower their senators to represent them accurately in the confirmation process. Because all four of the relevant factors weigh in Fix the Court's favor, this Court should grant the requested injunctive relief compelling DOJ to process the request promptly and produce non-exempt, responsive records on a timely basis.

## I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute itself provides jurisdiction for this Court to consider this matter and grant all necessary injunctive relief. It states:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B). When an agency fails to comply with the applicable time-limit provisions in the FOIA statute, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails to comply with statutory time limits). This includes a failure to respond to a FOIA request within the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) ("failure to process FOIA requests in a timely fashion is 'tantamount to denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)). Fix the Court has therefore exhausted all applicable administrative remedies, and this claim is ripe for adjudication.

## II.     FIX THE COURT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). Consideration of these factors here demonstrates Fix the Court's entitlement to injunctive relief.

### A.     Fix the Court Is Likely to Succeed on the Merits.

As a clear matter of established law, Fix the Court is entitled to a prompt determination on its FOIA request, and the timely processing and production of non-exempt responsive records. FOIA clearly and unambiguously provides that federal agencies must make records

7

"promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A); *see also* 5 U.S.C. § 552(a)(6)(A)(i). DOJ has failed to meet these clear statutory obligations here.

As an initial matter, the material Fix the Court seeks—correspondence between Judge Kavanaugh and the Office of Legal Policy—undoubtedly falls within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the request reasonably described the records sought (specifying a timeframe and individuals within OLP's office from whom correspondence was sought) and complied with all necessary procedures. *See* Roth Decl. ¶¶ 13-14; Ex. A at 2. Fix the Court is therefore more than likely to succeed in establishing its entitlement to the requested records.

Moreover, even DOJ acknowledges that Fix the Court's request warranted expedited processing. Roth Decl. ¶ 17; Ex. B (DOJ letter granting expedition). Despite DOJ's recognition of the need for expedited processing, and despite DOJ's decision to take ten extra days past the default statutory deadline (*see* 5 U.S.C. § 552(a)(6)(B)(i)-(iii)), DOJ has still failed to comply with its obligation to timely make a determination as to the scope of the records it intends to produce or withhold and the reasons for any withholdings. *See* 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents.").

Fix the Court will ultimately prevail in demonstrating its entitlement to a prompt determination on its FOIA request and the timely processing and prompt disclosure of any non-exempt responsive records. FOIA provides clear statutory directives to agencies in responding to FOIA requests, and DOJ has violated them. In the meantime, Fix the Court urgently needs DOJ to fulfill its clear statutory obligations. Judge Kavanaugh has been nominated. Confirmation hearings are underway. Senator McConnell seeks a rapid confirmation. Time is of the essence.

**B.      Fix the Court Will Be Irreparably Harmed Absent the Requested Relief.**

Fix the Court will be harmed irreparably if DOJ does not promptly process its request, make a timely determination, and promptly produce non-exempt records, especially if further delays prevent disclosure of these records until after the Senate has made a decision on Judge Kavanaugh's nomination. Only preliminary injunctive relief can address this urgent need and the specter of irretrievably losing Fix the Court's rights under FOIA. As this Circuit has long held, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

Accelerated review by this Court can ensure that unchecked delays do not irrevocably deprive Fix the Court of the prompt determination on its request and the prompt disclosure of the non-exempt responsive records to which it is entitled under FOIA. As this Court has previously noted, "[t]o afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request." *Wash. Post*, 459 F. Supp. 2d at 66. Further unlawful delay in processing the request will irreparably harm the ability of Fix the Court—and the public—to receive the determination and prompt production of materials it is entitled to by law in time to inform the public discussion of and confirmation hearings regarding Judge Kavanaugh's record and its implications for the future of the United States Supreme Court.

Losing the ability to review Judge Kavanaugh's record would be particularly harmful to Fix the Court, whose mission is to promote transparency, accountability, and reform on the Supreme Court. Roth Decl. ¶¶ 1-2. Fix the Court's entire purpose is to use transparency to help it, and the public, monitor the activities of federal courts and assess judges' records. *Id.* ¶¶ 4-6. A prompt determination and timely production of non-exempt records would equip Fix the Court to enhance the public debate on these issues and to raise awareness of reforms Fix the Court believes are necessary to improve the Supreme Court's transparency and accountability. *Id.* ¶ 9. These records therefore possess unique value while Judge Kavanaugh's nomination is pending with confirmation hearings in rapid progress, and that value will evaporate when the Senate makes its decision on Judge Kavanaugh's nomination and the public debate ends.

Our system of representative democracy depends upon an informed citizenry. That principle animates FOIA. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Fix the Court's public advocacy embodies that principle. Its work strives to provide the public with important information about the Supreme Court and, in this case, an individual who may join it. Roth Decl. ¶¶ 5-6. The public can in turn use that information to participate in robust public debate and to influence the nomination process, which is often shaped by constituents' communications to their elected officials about their support for or opposition to a nominee. Members of the public cannot reliably fulfill that role or meaningfully participate in the process without adequate information on which to base their opinions, and organizations like Fix the Court cannot inform and participate in the public discourse about crucial government institutions and reforms without access to information about government activities. In light of the

Senate Majority Leader's announced commitment to fast-track a decision on Judge Kavanaugh's nomination, there is an urgent need to inform the public—now—about his legal career and qualifications for a lifetime appointment to the nation's highest court.

If the DOJ is allowed to drag its feet even further in processing Fix the Court's request and the Senate confirms (or votes not to confirm) Judge Kavanaugh without the public having the benefit of the insight contained in the records sought by this request, the public's ability to participate meaningfully in the debate will have been irreparably harmed, as will Fix the Court's interest in obtaining its statutorily-guaranteed access to these records and using those records in support of its reform and accountability mission.

This case is therefore much like *Washington Post v. Department of Homeland Security*, in which the plaintiff sought visitor logs for the Vice President's office and residence, which the plaintiff asserted would "assist the public in the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration." 459 F. Supp. 2d at 65 (internal quotation marks omitted). The plaintiff explained that "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion." *Id.* Issuing its opinion in October of 2006, this Court concluded that "[b]ecause the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Id.* at 75.[3] The same is true here, with the Senate rushing to push through Judge Kavanaugh's

---

[3] In subsequent, unrelated litigation, the D.C. Circuit held that White House visitor logs are not "agency records" for purposes of FOIA. *See Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 228-29 (D.C. Cir. 2013). However, nothing in that decision affects this Court's analysis regarding irreparable harm in *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006).

nomination before the upcoming midterm elections in November. The nomination and confirmation hearings have attracted widespread media and public interest and general recognition that the Senate's decision on his nomination has the potential to alter the balance of the Supreme Court and the future of its jurisprudence on fundamental constitutional questions for decades.[4] The window for public education and discussion will be open only briefly, and it is imperative that Fix the Court receive the records it seeks before that window closes. *See Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) ("Although, and perhaps because, the Court cannot predict the timing of passage of the legislation in light of the ongoing debate in the legislature and with the Administration, the Court finds that delayed disclosure of the requested materials may cause irreparable harm to a vested constitutional interest in 'the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry.'") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Indeed, by now it is almost axiomatic that "stale information is of little value." *Payne*, 837 F.2d at 494; *accord Calderon v. U.S. Dep't of Ag.*, 236 F. Supp. 3d 96, 114 (D.D.C. 2017); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information

---

[4] *See, e.g.*, Stephen Jessee & Neil Malhotra*, The Chart That Shows the Supreme Court Will Be Out of Step With the Country*, N.Y. Times, July 12, 2018, https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html (arguing that "[i]f Judge Brett Kavanaugh joins the Supreme Court, it will mark a sharp move to the right"); Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change The Supreme Court*, FiveThirtyEight (July 9, 2018, 9:34 PM), https://fivethirtyeight.com/features/how-brett-kavanaugh-would-change-the-supreme-court/; Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time, July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/.

that is highly relevant to an ongoing public debate." (citing *Wash. Post*, 459 F. Supp. 2d at 75;

*EPIC*, 416 F. Supp. 2d at 41)). Thus, "failure to process FOIA requests in a timely fashion is

'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6

(1974)). That is no doubt why courts in this jurisdiction have repeatedly issued preliminary

injunctions in FOIA cases where the requester seeks information urgently needed to inform a

pending or developing situation. *See, e.g.*, *id.* at 74-75 (finding irreparable harm where requested

records could inform public opinion in advance of upcoming election); *EPIC*, 416 F. Supp. 2d at

40-41 (finding irreparable harm where requested records related to "current and ongoing debate

surrounding the legality of the Administration's warrantless surveillance program"); *Leadership

Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding urgency

requirement for expedition satisfied based on "upcoming expiration of the special provisions of

the Voting Rights Act in 2007"); *Aguilera v. FBI*, 941 F. Supp. 144, 151-52 (D.D.C. 1996)

(finding irreparable harm where requested records related to prisoner's challenge to conviction

while already serving prison sentence); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976)

(granting preliminary injunction for records needed for upcoming criminal trial); *cf. Sai v.

Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10-11 (D.D.C. 2014) (finding no irreparable harm

because plaintiff offered no evidence that requested records would be of "vital public interest for

an upcoming congressional election or congressional or agency decision-making process

requiring public input" (internal citations and quotation marks omitted)).

     As in many of those cases, Fix the Court's ability to contribute to the public's

understanding of the qualifications of the nominee to the Supreme Court will be irreparably

harmed if DOJ is not required to make a timely determination and promptly process Fix the

Court's FOIA request and produce all responsive documents on an accelerated schedule. DOJ

itself recognizes this reality, and through this motion, Fix the Court seeks judicial intervention to ensure DOJ will comply with its obligations.

### C. The Requested Relief Will Not Burden Others' Interests.

Fix the Court, the public, and the DOJ are aligned in their mutual strong interest in the disclosure and review of Judge Kavanaugh's record.

DOJ itself cannot claim to be harmed by an order compelling it to comply with its statutory obligations. Indeed, DOJ has already recognized that Judge Kavanaugh's nomination demands review of his lengthy record and that that review will require allocation of additional resources. Deputy Attorney General Rod J. Rosenstein contacted *every* United States Attorney across the country to ask that they make potentially hundreds of federal prosecutors available to assist with a prioritized review of government records pertaining to Judge Kavanaugh.[5] Where the government has already conceded the extraordinary value of these and similar records and begun to marshal resources for their review, Fix the Court's request for prompt processing and production would not meaningfully increase DOJ's burden.

Nor would granting Fix the Court relief unduly burden other FOIA requesters. As noted, DOJ has assembled a team to prioritize review of Judge Kavanaugh's records, and that team is be drawn from attorneys who are not typically tasked with processing FOIA requests. Ordering DOJ to promptly release all records responsive to Fix the Court's request, therefore, need not divert resources currently devoted to processing other FOIA requests, nor is there reason to believe that vindication of Fix the Court's rights to these records would delay or impair the rights of any other FOIA requester to timely processing and disclosure of other records.

---

[5] Katie Benner, *Rosenstein Asks Prosecutors to Help With Kavanaugh Papers in Unusual Request*, N.Y. Times, July 11, 2018, https://www.nytimes.com/2018/07/11/us/politics/rosenstein-kavanaugh-document-review-prosecutors.html.

Additionally, the whole purpose of the addition of the expedited processing provision in 1996 was to prioritize requesters with an urgent need for information. *See EPIC*, 416 F. Supp. 2d at 36 (explaining 1996 amendment adding expedited processing requirements). Thus, Congress itself contemplated that certain requesters would go to the head of the queue upon a showing of compelling need—as DOJ agrees Fix the Court has made in this instance. *See* Roth Decl. ¶ 28; Ex. B. Thus, an order from this Court that DOJ promptly process Fix the Court's request and provide all non-exempt responsive records on an accelerated schedule set by this Court would be entirely consistent with the policy enacted by Congress and will not harm the interests of the non-moving party or any other entity.

### D.     The Public Interest Favors the Requested Relief.

A preliminary injunction is indispensable to protect the public's right to government transparency and essential interest in informed and meaningful participation in the Senate confirmation process. Consequently, the requested relief clearly serves the public interest.

First, courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F. Supp. 2d at 76. The very existence of the Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) ("There is public benefit in the release of information that adds to citizens' knowledge" of government activities).

But the public benefit of injunctive relief here extends far beyond the general public interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that

15

citizens are able to participate in public debate in an informed manner, and this interest grows with the gravity of public decisions at hand. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). There are few moments of public debate with urgency equal to that surrounding selection of a new justice to serve on the nation's highest court.

Courts have recognized the importance of timely disclosure when information is relevant to elections. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74-75. The public's need is arguably stronger in advance of a Supreme Court confirmation, because the public will not have an opportunity to revisit this decision post-confirmation with the benefit of either hindsight or belated disclosures. Congress and the Executive Branch comprise myriad individuals and face regular elections that afford the public regular opportunities to affirm or disavow their actions and to shape their priorities; while each election is significant, there are natural limits on the effects of each individual election and frequent opportunities for the public to redress errors or reverse course. Not so for the third branch of government. Vacancies on the Supreme Court are relatively rare, and lifetime appointments render the decisions on how to fill them all but irrevocable.

Although the public enjoys far less ability to influence its highest court than it wields over the political branches, the Supreme Court, and each of its justices, exerts acute influence over the day-to-day lives of the American public. As one of only nine justices on a court that has been, of late, sharply divided, Judge Kavanaugh would be in a position to have significant impact for a generation with regard to fundamental rights and equal protection of the laws and to exert substantial, even dispositive, influence on resolution of cases guiding the relationship between

16

the branches of government and defining the limits of executive and legislative power. The public has only one opportunity to assess his fitness for this august position and to convey its views and concerns to the senators entrusted with weighing his nomination. A preliminary injunction ensuring timely processing and disclosure of records reflecting Judge Kavanaugh's record of government service maximizes that public's ability to avail itself of that opportunity.

## CONCLUSION

For the foregoing reasons, Plaintiff Fix the Court respectfully requests that this Court grant a preliminary injunction requiring DOJ to make a timely determination on Fix the Court's FOIA request and promptly process and produce all non-exempt responsive records and an index justifying the withholding of any withheld records by such date as the Court deems appropriate.

Dated: September 6, 2018                    Respectfully submitted,

*/s/ Elizabeth France*
Elizabeth France
D.C. Bar No. 999851

*/s/ Austin R. Evers*
Austin R. Evers
D.C. Bar No. 1006999

*/s/ Hart W. Wood*
Hart W. Wood
(D.D.C. Bar application pending)
D.C. Bar No. 1034361

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5244
beth.france@americanoversight.org
austin.evers@americanoversight.org
hart.wood@americanoversight.org

*Counsel for Plaintiff Fix the Court*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2018, I caused a copy of the foregoing Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction to be hand-delivered to defendant at the following address:

U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

In addition, a courtesy copy has been delivered to:

Jessie K. Liu
U.S. Attorney for the District of Columbia
555 4th Street NW
Washington, DC 20530

Dated: September 6, 2018                     */s/ Elizabeth France*
                                             Elizabeth France
                                             D.C. Bar No. 999851
                                             AMERICAN OVERSIGHT
                                             1030 15th Street NW, B255
                                             Washington, DC 20005
                                             (202) 869-5244
                                             beth.france@americanoversight.org

                                             *Counsel for Plaintiff Fix the Court*

18